FILED IN CHAMBERS
THOMAS W. THRASH JR
U.S D. C.  Atlanta
JUN 28 2006
LUTHER D. THOMAS, Clerk
By: /s/ Sewell
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| RANDALL GERALD EVANS, Inmate # GDC 20224, EF 236140, Plaintiff, | :: :: :: :: | CIVIL ACTION NO. 1:06-CV-1089-TWT |
| v. | :: :: :: | |
| MILTON BUDDY NIX, Chairman, State Board of Pardons and Paroles, JOAN MURRAY, Chief Parole Officer, DAVID CLIPPARD, Parole Officer, Defendants. | :: :: :: :: :: :: | PRISONER CIVIL RIGHTS 42 U.S.C. § 1983 |

## ORDER AND OPINION

Plaintiff, an inmate at the Hays State Prison in Trion, Georgia, has submitted the instant pro se civil rights action. For the purpose of dismissal only, leave to proceed in forma pauperis is hereby **GRANTED**. The matter is now before the Court for a 28 U.S.C. § 1915A frivolity determination.

## 28 U.S.C. § 1915A Frivolity Review

Pursuant to 28 U.S.C. § 1915A, a federal court is required to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or an officer or employee thereof, to determine whether the action (1) is frivolous, malicious, or fails to state a claim on which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief. A claim is frivolous when it "has little or no chance of success," i.e., when it appears "from the

face of the complaint that the factual allegations are clearly baseless or that the legal theories are indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it appears beyond doubt that the plaintiff could prove no set of facts that would entitle him to relief. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989). "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1187-88 (11th Cir. 2002) (reviewing the dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim).

Plaintiff sues the Chairman of the State Board of Pardons and Paroles (the Board), his Chief Parole Officer, and his Parole Officer, Mr. David Clippard. [Doc. 1 ¶ III; Doc. 4.] Plaintiff asserts four causes of action: (1) cruel and unusual punishment, (2) denial of the right to an attorney, (3) denial of access to the courts, and (4) denial of due process in the revocation of his parole. [Id. ¶ IV.]

Plaintiff alleges the following series of events. On August 2, 2004, he was arrested "on a traffic violation" in Jackson County, Georgia. [Id. ¶ IV & Ex. 4 at 3.] On August 3, 2004, the Board issued a warrant for his arrest for violating his January 1998 parole. [Id. ¶ IV & Ex. 1.] In light of Plaintiff's alleged medical needs, his

parole officer "speedily rushed to the jail and persuaded [him] to sign a waiver to enter a nine month treatment program and be reparoled upon completion within 6 to 9 months." On August 12, 2004, Plaintiff signed a "Waiver of Final Hearing" wherein he agreed that his parole "shall be revoked without a hearing," admitted that he had violated seven separate conditions of his parole, and waived the rights that would be available to him under Georgia law at a final revocation hearing, including "the opportunity to be represented by an attorney." The waiver stated that "the Parole Board intends to reconsider [his] case in six months." [Id. ¶ IV & Ex. 5.]

By letter and accompanying Order of Revocation, dated August 31, 2004, the Board informed Plaintiff that it had revoked his parole and had recommended to the Department of Corrections that he be placed in the Homerville Parole Revocation Unit (Homerville), which apparently is a special unit for the rehabilitation of alcoholic offenders. The Board informed Plaintiff that, should he be "screened out of participation, [he would] be reconsidered under the Parole Guidelines," but warned him that "failure to satisfactorily complete the program [would] cause a significant delay in any future parole consideration by the Board." [Id. ¶ IV & Ex. 6.]

On October 23, 2004, Plaintiff was transferred from the Jackson County Jail to Baldwin State Prison and "placed on mental health treatment and back on his

3

medication." [Id. ¶ IV.] On January 12, 2005, Plaintiff was given a final revocation hearing, although he was not represented by counsel. [Id. attach. at 5 & Ex. 4.] At the hearing, Plaintiff admitted that he was guilty, in full, of five of the seven alleged parole violations noted on his hearing waiver form, and that he was guilty, in part, of a sixth alleged violation. [Id. Ex. 4 at 2-4.] The hearing officer recommended that Plaintiff "go to Homerville for treatment" and, if there is a problem getting him into Homerville, "then we will come up with the best, the next best institution" that can stabilize and evaluate him. [Id. Ex. 4 at 13.]

By letter and accompanying Findings of Fact, dated January 18, 2005, the Board reiterated its revocation of Plaintiff's parole and restated its recommendation that he be placed at Homerville. [Id. attach. at 5 & Ex. 7.] By letter dated June 14, 2005, the Board informed Plaintiff that based on a 1998 Georgia Supreme Court decision, he was ineligible for parole, even though he had been released on parole previously, because he had been sentenced pursuant to O.C.G.A. § 17-10-7(c) as a recidivist for his 1988 burglary. [Id. attach. at 5-6 & Ex. 10.]

Plaintiff seeks "immediate review and or parole eligibility release from custody," the same relief afforded to his 1988 burglary co-defendant. [Doc. 1 ¶ V.] Plaintiff also seeks immediate reconsideration for parole pursuant to the Parole

4

Guidelines, as set forth in his August 12, 2005, hearing waiver. [Id.] In addition, Plaintiff appears to seek a belated opportunity to participate in the Homerville program, as the Board had promised. [Id.] In the alternative, Plaintiff seeks compensation for the disability benefits he has lost as a result of the revocation of his parole. [Id.] [See generally Doc. 3 at 1-13 ("Amended Petition, Brief in Support and Citation of Authorities").]

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a defendant's act or omission under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). If a plaintiff fails to satisfy these requirements or to provide factual allegations supporting a viable cause of action, the claim is subject to dismissal. See Chappell v. Rich, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because plaintiffs' factual allegations were insufficient to support the alleged constitutional violation).

### Cruel and unusual punishment

Plaintiff claims that Defendants violated his right to be free from cruel and unusual punishment when (1) his parole officer failed to insure that Plaintiff obtained

AO 72A
(Rev. 8/82)

medical attention after the issuance of the Board's August 3, 2004, arrest warrant that prevented him from posting bond on his August 2, 2004, traffic offenses; (2) he remained on parole even though his burglary co-defendant received a pardon; and (3) parole officials confiscated his truck keys, driver's license, and vehicle in July 2001. [Doc. 1 attach. at 6 & Ex. 4 at 7.] For there to be an Eighth Amendment violation constituting cruel and unusual punishment, "[f]irst, there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation – one denying the minimal civilized measure of life's necessities. Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations omitted).

None of Plaintiff's allegations state a claim for cruel and unusual punishment attributable to Defendants. In particular, Plaintiff has suggested no basis for concluding that an "act or omission" by any Defendant, including his parole officer, caused the alleged denial of his prescription medication at the Jackson County Jail. See Jackson v. Sauls, 206 F.3d 1156, 1168 (11th Cir. 2000) (stating that "[f]or damages to be proximately caused by a constitutional tort, a plaintiff must show that . . . [the] damages were the reasonably foreseeable consequences of the tortious acts

or omissions in issue"). The Board's August 3, 2004, arrest warrant, which Plaintiff alleges prevented him from bonding out of jail and thereby denied him access to his medications, does not establish the requisite causal connection because it was not reasonably foreseeable that issuing the warrant would cause Plaintiff to be denied his medications. Moreover, Plaintiff has not alleged that any named Defendant had direct or indirect control over his medical care at the Jackson County Jail.

Next, Plaintiff asserts that his continued incarceration – in contrast to the pardon for his burglary co-defendant – constitutes cruel and unusual punishment (and a violation of his equal protection rights). [Doc. 1 attach. at 6; Doc. 3 at 2, 6.] However, this Court is not aware of any basis for asserting a claim of cruel and unusual punishment as the result of a pardon granted to a fellow prisoner, and Plaintiff has not suggested any. Moreover, Plaintiff has offered no recognized basis for asserting an equal protection claim. See Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (stating that, in order to establish an equal protection violation, "a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race") (internal quotations omitted); Earin v. Beto, 453 F.2d 376, 377 (5th Cir. 1972) (noting the "long established law that

7

differing sentences within the maximum provided by statute for persons convicted of the same crime do not offend the Constitution").

Finally, Plaintiff's claim regarding events that occurred in July 2001, presented herein in May 2006, almost five years later, is barred by the two-year statute of limitations applicable to a § 1983 claim "arising out of events occurring in Georgia." See Thigpen v. Bibb County, 223 F.3d 1231, 1243 (11th Cir. 2000). Accordingly, Plaintiff's claims of cruel and unusual punishment are due to be dismissed, as is his equal protection claim.

## Due process and right to counsel during parole revocation proceedings

Plaintiff next claims that he waived his right to an attorney unknowingly and involuntarily because he was told, falsely, that if he signed the final revocation hearing waiver, he would be placed in Homerville for treatment of his alcohol dependency and would be reconsidered for parole within six months thereafter. Instead, he has yet to be sent to Homerville and, within a year of signing the waiver, he was informed that he was ineligible for release on parole for the three years remaining on his 20-year burglary sentence. [Doc. 1 attach. at 7.]

The Supreme Court set forth the minimum due process requirements for a parole revocation hearing as follows:

>   (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey v. Brewer, 408 U.S. 471, 489 (1972).[1] Later, in Gagnon v. Scarpelli, 411 U.S. 778 (1973), the Supreme Court rejected the "contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole

---

[1] This Court notes that, to the extent that Plaintiff seeks either release from custody or damages arising from his return to custody, his claims are barred by the doctrines enunciated in Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (holding that "when a state prisoner . . . seeks . . . a determination that he is entitled to immediate release or a speedier release from . . . imprisonment, his sole federal remedy is a writ of habeas corpus"), and Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (noting that the Court's relevant precedents, "taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration"). Currently, however, Plaintiff has not exhausted his state remedies, a prerequisite to filing a federal habeas petition with respect to the claims raised herein. See www.gasupreme.us at "docket" for S05H1071. Accordingly, this Court construes his claims as challenging, not the fact of the parole revocation, but rather the manner in which his parole was revoked, i.e., the failure of the Board to effect his transfer to Homerville and then to reconsider him for parole. See Harden v. Pataki, 320 F.3d 1289, 1301-02 (11th Cir. 2003) (holding that a 42 U.S.C. § 1983 claim seeking damages based on the procedures used to extradite a state prisoner was not barred by the doctrines enunciated in Wilkinson).

revocation cases," and stated that the matter should be decided on a case-by-case basis whenever the "parolee's version of a disputed issue can fairly be represented only by a trained advocate." Id. at 787-90 (noting that "the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings").

This Court notes that Plaintiff waived the rights set forth above in Morrissey and Gagnon when he signed the "Waiver of Final Hearing" form. [See Doc. 1 Ex. 5.] Moreover, Plaintiff did receive a final revocation hearing, including written prior notice of the alleged parole violations (as set forth in his hearing waiver form); disclosure of the evidence against him (entered by Plaintiff's parole officer, as indicated infra); the right to present witnesses (Plaintiff presented his sister and mother as witnesses on his behalf); the right to confront witnesses (only one witness appeared against Plaintiff, namely, his parole officer, and Plaintiff had the opportunity to confront him, which Plaintiff did only indirectly via discussions with the hearing officer); a neutral and detached hearing body (a member of the Board presided at the hearing); and a written statement of the evidence relied upon as reasons for revoking his parole (attached to the January 18, 2005, Notice of Revocation). [See Doc. 1 Exs. 4, 5, 7.] Furthermore, given the number of parole violations alleged against Plaintiff,

all but one of which involved simple and straightforward factual issues, his parole revocation hearing was not one of those rare cases necessitating the assistance of counsel to insure the fundamental fairness of the proceedings. See Gagnon, 411 U.S. at 790.

Accordingly, any claim that Plaintiff was denied his constitutional rights by being coerced or deceived into signing the hearing waiver form is mooted by his having received a revocation hearing at which his federal constitutional rights were protected. Moreover, the revocation hearing and the findings associated therewith constituted the parole reconsideration promised to Plaintiff in the waiver form. [See Doc. 1 Ex. 7.] Although Plaintiff was denied release on parole after that reconsideration, the waiver form did not promise actual release. [See Doc. 1 Ex. 5.]

In his "Amended Petition," Plaintiff alleges a violation of his ex post facto rights based on the change in Board policy regarding a recidivist's eligibility for parole. [Doc. 3 at 6-8.] The Court takes judicial notice that Plaintiff previously litigated a similar claim, alleging that the Board's June 14, 2005, letter excluding him from parole consideration violated his ex post facto rights. This Court rejected that claim based on Metheny v. Hammonds, 216 F.3d 1307, 1310-11 (11th Cir. 2000) (holding that retroactive application of the Board's new policy excluding recidivists

11

from parole eligibility, correcting the Board's own previous, erroneous interpretation of O.C.G.A. § 17-10-7(c), did not violate the Ex Post Facto Clause).[2] See Evans v. Upton, Civil Action No. 2:05-CV-0125 (N.D. Ga. Apr. 13, 2006) (Doc. 16 at 4).

Plaintiff further claims that he was denied due process at his revocation hearing when his parole officer falsely stated that Plaintiff had been arrested and charged with simple battery against his own mother on July 14, 2001. [Doc. 1 attach. at 9.] See Evans v. Upton, Civil Action No. 2:05-CV-0125 (Doc. 8 Ex. 9). However, the parole officer stated at the hearing that the battery charge at issue had been dead docketed. [Doc. 1 Ex. 4 at 7.] Furthermore, the battery charge was not one of Plaintiff's seven alleged parole violations. [Id. Ex. 4 at 2-4.]

Plaintiff also appears to suggest that he was falsely charged with violating the conditions of his parole by committing various traffic offenses on August 2, 2004, inasmuch as he did not commit those offenses. [See Doc. 1 Ex. 4 at 9.] However, the parole officer stated at the revocation hearing that Plaintiff had been convicted of a

---

[2] The Eleventh Circuit also held that the change in Board policy did not violate the Due Process Clause. Metheny, 216 F.3d at 1314. Accordingly, to the extent that Plaintiff alleges a denial of his due process rights as a result of his ineligibility for parole [see Doc. 3 at 1-2, 5, 9-10], that claim is due to be dismissed. See also Jones, 279 F.3d at 946 (stating that "a Georgia inmate has no [due process] liberty interest in parole").

12

D.U.I. offense and of falsely reporting a crime, charges which arose out of the August 2, 2004, traffic incident, and Plaintiff acknowledged that he was then serving time concurrently in state prison on those Jackson County offenses. [Id. Ex. 4 at 5-6, 9.] The parole officer also stated that the remaining charges (one count of leaving the scene of an accident with damage and two counts of failing to notify the owner after striking a fixed object) had been "nolle prossed." Finally, the parole officer noted that "the sentence sheet in the DUI and the false report of a crime [were] in the information [he had] already entered into evidence." [Id. Ex. 4 at 5.]

In sum, although Plaintiff waived the rights guaranteed to him under the United States Constitution with respect to a final parole revocation hearing, the Board nevertheless afforded him the full panoply of those rights at his January 12, 2005, hearing. Therefore, all of Plaintiff's due process claims alleging the denial of any such right are due to be dismissed.³

---

³To the extent that Plaintiff seeks placement in Homerville, the Court notes that "prisoners do not have a constitutional right to placement in a particular institution." See McCain v. Scott, 9 F. Supp. 2d 1365, 1370 n.1 (N.D. Ga. 1998) (concluding that the plaintiff failed to state a claim by alleging, without more, that defendants violated his constitutional rights by transferring him to a different prison facility).

**Access to the courts**

Finally, Plaintiff claims that he was denied "access to the court" because a copy of his signed waiver was withheld from his state habeas corpus and mandamus proceedings, wherein he sought relief from the parole revocation, thereby preventing him from proving that the State had failed to honor the waiver agreement. In essence, Plaintiff alleges that Defendants tricked him into signing the waiver by promising him a speedy release on parole when they knew all along that, as a recidivist, once he was returned to prison, he would be ineligible for any further parole. [Doc. 1 attach. at 8-9.] As noted above, however, the Board both honored the waiver agreement and provided Plaintiff with a final revocation hearing at which all of his constitutional rights were upheld. Furthermore, the fact that Plaintiff was able to prosecute both a habeas corpus petition and a mandamus petition in the state courts belies his claim that he was denied access to those courts.

14

Accordingly,

Plaintiff's motion to add his parole officer as a Defendant [Doc. 4] is **GRANTED**, and,

Because Plaintiff has failed to state a claim on which relief may be granted, the instant complaint is hereby **DISMISSED**. See 28 U.S.C. § 1915A(b)(1).

**IT IS SO ORDERED** this 28 day of June, 2006.

_____
THOMAS W. THRASH, JR.
UNITED STATES DISTRICT JUDGE